## GREEN PEARSON v. THE STATE.

### (Knoxville.   September Term, 1920.)

1. **HOMICIDE.**  Shot at retreating man justified if circumstance indicate intention to withdraw.

The mere fact that deceased was fired upon while he was retreating does not deprive accused of the right to rely on self-defense, if under all the circumstances he entertained a justifiable belief that deceased was not retreating from the fight, but would immediately renew it, and that the imminent danger still existed. (*Post*, p. 389.)

2. **CRIMINAL LAW.**  Argument accused was murderer and adulterer held improper.

In a prosecution for homicide, argument by prosecuting attorneys against freeing accused to continue his life of murder and adultery was inflammatory and improper, and not justified by evidence that accused had previously killed a man, in a prosecution for which he was acquitted, or by the testimony of a woman that she had had children by him. (*Post*, pp. 390, 391.)

3. **CRIMINAL LAW.**  Misconduct of prosecuting attorney held prejudicial.

Improper argument is not harmless, notwithstanding defendant's admission he shot deceased while the latter was going from him, and the verdict convicted him only of voluntary manslaughter, since his admission did not deprive him of the right of self-defense if deceased intended to renew the fight. (*Post*, pp. 391, 394.)

Case cited and distinguished: Turner v. State, 72 Tenn., 210.

4. **HOMICIDE.**  Dying declarations should be considered in light of circumstances.

---

*On the question of weight to which dying declarations are entitled, see notes in 56 L. R. A., 445; 52 L. R. A. (N. S.), 152.

143 Tenn.—25

Dying declarations, which are an exception to the rule against hearsay, but which are apt to be given greater value than testimony of witnesses by the jury, should be weighed in consideration of the fact they are made when declarant is not in condition to speak calmly, and generally made to his friends out of the presence of accused, so that facts favorable to accused are not brought out. (*Post*, *pp*. 394-396.)

Case cited and approved: Still v. State, 125 Tenn., 94.

Case cited and distinguished: Poteete v. State, 68 Tenn., 261.

5. CRIMINAL LAW. Instruction on weight of dying declarations must be given without request.

In a prosecution for homicide, where the dying declaration of deceased was admitted in evidence, it was reversible error for the court to omit to instruct the jury on the weight to be given to such declarations, even though no request for such instruction was made. (*Post*, *pp*. 396-398.)

Cases cited and approved: Ripley Case, 39 Tenn., 217; Allsup Case, 5 La., 362.

Case cited and distinguished: Jollay's Case, 130 Tenn., 309.

---

FROM HAWKINS.

---

Error to the Circuit Court of Hawkins County.—Hon. D. A. Vines, Judge.

Phillips & Hale, for appellant.

Charles L. Cornelius, Assistant Attorney-General, for the State.

Mr. L. D. Smith, Special Justice, delivered the opinion of the Court.

Plaintiff in error, Green Pearson, was convicted of voluntary manslaughter, in the circuit court of Hawkins county, for the killing of one James Short, on Sunday, January 11, 1920.

Plaintiff in error assigns several grounds of error to the judgment of conviction.

The first assignment is upon the facts of the case, and to the effect that the evidence preponderates in favor of the innocence of the plaintiff in error.

There is practically no conflict in the evidence as to the facts leading up to the killing. The deceased, Short, and plaintiff in error were brothers-in law; Short having married Pearson's sister. They lived within about one hundred and fifty yards of each other on adjoining land. Bad feeling had existed between the two families for a number of years. The deceased was a fussy and quarrelsome man, and got along badly with his neighbors. He had shown by threats and otherwise that he entertained very hostile feelings toward the plaintiff in error. It seems that there had been some controversy between the deceased and plaintiff in error with respect to a water course or ditch. With this ditch open the water would flow into the plaintiff in error's premises, and he insisted upon its being stopped up and filled, whereas the deceased insisted upon its being open.

On Sunday morning before the tragedy, plaintiff in error had left his home, and while he was gone, his daughter, about ten years of age, went down into the field, and was throwing out the rocks from this ditch which some of the family of the deceased had placed therein. At

that time the deceased was sitting near his home, and in view of the Pearson home, on a pile of lumber. The deceased's wife, observing the Pearson child throwing the rocks out of the ditch, went down to the place and engaged in a quarrel with the wife of the plaintiff in error, who came on the scene, and while this quarrel was in progress the plaintiff in error rode up to his house on his horse. Thereupon the deceased's wife began to address her remarks to plaintiff in error, who made no reply to his sister, but stayed by his horse, simply nodding his head while she was talking. The deceased seeing this quarrel going on, went into his house, got his shotgun and started down to where the quarrel was in progress. The plaintiff in error, who was at this time near his house, standing by his horse and taking no part in the quarrel, but observing the deceased with his gun going in the direction of the place where the quarrel was in progress, went into his own home and armed himself with a pistol, and went out through the back door.

Plaintiff in error testified that soon after he got out there the deceased made threats that he would kill him and the whole family, and raised his gun as if to shoot, and that thereupon he deliberately fired his pistol at the deceased three times, and killed him.

His defense is that he had the right to do this to protect himself and family from death or great bodily harm at the hands of the deceased.

It is contended by the State that the plaintiff in error cannot avail himself of this defense, because at the time he shot the deceased, the deceased was retreating, with

his back to the plaintiff in error. There is practically no dispute that at the time the first shot was fired the deceased was advancing with his gun, and there is practically no dispute in the evidence that at the time the subsequent shots were fired the deceased had his back to the plaintiff in error. The wounds from which the deceased died entered in the back.

The mere fact that the deceased was fired upon while he was retreating would not deprive the plaintiff in error of the right to rely upon his plea of self-defense, provided that under all the circumstances he entertained the belief, and was justified in that belief by the circumstances, that the deceased was not retreating from the fight, but would immediately renew it, and the imminent danger still existed.

It is a close question as to where the weight of the proof on this question is, and we shall not undertake to solve it, since we find it necessary, under other assignments, to reverse the case and remand it for a new trial. The rule of this court which places upon the plaintiff in error the burden of showing his innocence by preponderance of the evidence only applies where he has had a fair and impartial trial, and one free from prejudicial error. The law affords to defendant the right to an acquittal if there is in the minds of the jury a reasonable doubt as to his guilt, and he is therefore entitled to have such a trial as will protect him in that right.

This brings us to a consideration of assignments of error which challenge the action of the trial court in two or more particulars.

Plaintiff in error complains of the action of the trial court in permitting counsel for the State to indulge in improper and inflammatory language in their arguments. One of the counsel for the State, in his argument, used this language:

"Will you, gentlemen of the jury, allow this defendant to go free and continue his life of murder and adultery? Two men lie dead in their graves, two sets of children are fatherless—all because of this murderous and adulterous man. Will you continue to allow him to follow that course? Will you turn a man like that loose upon the people of Hawkins county to continue to commit murder and adultery?".

The defendant's counsel entered an objection to this argument, to which the court replied:

"I think it is legitimate, proceed with your argument."

The district attorney-general in his closing argument used this language:

"Think of it, gentlemen of the jury: This defendant has already killed two innocent men. This old adulterer. has two sets of orphans as living monuments of his deadly malice and passion, two notches on his gun; two men have bit the dirt. Will you turn him scot-free on the people of Hawkins county to continue such a course?"

To this argument defendant's counsel interposed a timely objection, which was likewise overruled by the court.

These remarks of counsel for the State were highly inflammatory, improper, and not justified by any evidence

in the case.

They were not justified by the admission of the defendant that he had previously killed a man. He had been acquitted of that charge, and could not be denounced as a murderer on that account. The previous killing could shed no light on the instant case. If he were subject to criticism for that killing, it would only go to his credit as a witness.

The testimony of the Justice woman to the effect that she had had illegitimate children by the plaintiff in error did not justify the remarks of the State's attorney.

It was improper to insist upon his conviction for this offense in order to prevent him from continuing a life of adultery. There was in fact no evidence that he was engaged in such a life at the time of the trial or at the time of the killing.

The contention of the State here on this question is not that the argument was proper, but that it was not prejudicial because of the defendant's own evidence to the effect that he shot the deceased in the back at a time when the deceased was going from him, and that his admission is sufficient to convict him of manslaughter. We cannot give our assent to that contention. The question of whether the defendant was justified in shooting when he did depends upon what the jury might conclude as to whether at that time the defendant had reasonable grounds to apprehend that the danger to his life or to his family had passed. We cannot decide that issue upon the weight of the evidence, but the jury must be left to decide it, giving the defendant the benefit of any reasonable doubt,

without being influenced or biased by inflammatory and
improper remarks of counsel. We cannot say that their
judgments were uninfluenced thereby, especially as they
had the affirmative sanction and approval of the trial
judge.

This court has had occasion in a number of cases to
call attention to the very great danger in the administra-
tion of justice, for trial courts to permit improper argu-
ments of counsel. In the case of *Turner* v. *State,* 4 Lea,
210, in commenting upon an argument made by the at-
torney-general of the State, in which the defendant was
denounced as one of a band of organized thieves, when
there was no evidence of that sort before the jury, the
court said:

"The circuit judge should not have permitted remarks
of this character. It is his duty, whether objections be
made by defendant's counsel or not, to see that no im-
proper statements are made likely to influence the jury
in their verdict, and that the cause is tried upon the
sworn testimony of witnesses examined in open court in
the presence of the accused, and that his right to cross-
examine the witnesses should not be abridged. We do
not mean to limit or restrict legitimate argument, but a
statement of facts entirely outside of the evidence, and
highly prejudicial to the accused, cannot be justified as
argument. We have no disposition to exercise our re-
visory power in a censorious spirit, and we do not say
that we would reverse for every departure from strict
propriety in matters of this character, but we could not
hesitate to do so when we can see that improper influences

have been permitted to go before the jury likely to deprive the defendant of a fair and impartial trial. The question being brought directly to our attention, we cannot pass it in silence.

"Too great care cannot be taken in excluding from the jury all improper influence. If we would make the preservation of jury trials a matter of boast, it ought, as far as possible, to be preserved in its purity. The guilty ought to be punished, but their conviction ought to be obtained upon the law and the evidence."

We cannot escape the conviction that the remarks shown by the record to have been made by the attorneys for the State in their opening and closing arguments were highly prejudicial, especially in view of the serious conflict in the evidence from which the jury was to determine whether the defendant's plea of self-defense was made out.

The failure of the trial judge to charge the jury upon the subject of the weight to be given to the dying declaration of the deceased, which was admitted in evidence, is made the ground of another assignment of error. The trial judge made no reference in his charge to this subject, although he did give some general rules for the jury's guidance, in weighing the testimony of witnesses introduced upon the trial. There was no request made by the defendant for special instructions on this subject, so the question is whether it was reversible error for the trial judge to fail to charge the jury as to the weight to be given to the dying declaration.

So far as we can ascertain, this question has not been passed upon by this court, and we have not had our at-

tention directed to any case where the specific question has arisen.

·· Dying declarations are in the nature of hearsay evidence, admissible only in homicide cases, and limited to the *res gestae,* and the identity of the accused, under an exception to the general rule, and from considerations of public interest, and upon the principle "that they are declarations made in extremity when the party is at the point of death, and when every hope of this world is gone; when every motive of falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth." 21 Cyc., 976.

Considerations of this kind naturally tend to exalt the value of this class of evidence in the minds of the jury. The circumstances under which the declarations were made, the intelligence of the declarant, the bodily pain under which he is suffering at the time, the influences surrounding him, and other conditions might very properly and materially lessen the weight to be given to these declarations, and unquestionably it is the duty of the jury to take into consideration, in determining the weight to be given to the dying declaration, when it is in conflict with other evidence, all the facts and circumstances which might reasonably have a material tendency to weaken its value. The courts have recognized the correctness of the proposition stated in 21 Cyc., p. 992:

"And again such declarations are frequently made when the declarant is in the throes of mortal agony, when the accuracy of his memory and the coolness of his judgment are to some extent impaired and it is impossible for him

to make a full, clear, and accurate statement of the facts. And it is always to be considered that the acts of violence of which the deceased may have spoken were likely to have occurred under circumstances of confusion and surprise calculated to prevent their being accurately remembered and leading to the omission of facts important to the truth and completeness of the narrative. In view of these facts such declarations should always be admitted with caution and weighed by the jury with the greatest deliberation in the light of all the evidence in the case."

In the case of *Still* v. *State,* 125 Tenn., p. 94, 140 S. W., 298, 302, this court quotes from *Poteete* v. *State,* 9 Baxt., 261, 40 Am. Rep., 90, as follows:

"Such testimony is subject to many objections and inherent infirmities. The party is not in condition, frequently, to give calm attention to the question to which he makes his statement. It is usually made in the presence of friends, whose feelings are excited against the other party against whom they are to be used, and who may easily direct the dying man's attention to the points in the case bearing most heavily on the guilt of the accused, and who will most naturally leave out of the view all that tend to a different view. The accused is not present, and has neither an opportunity to make suggestions to call attention to the circumstances in his favor, nor to cross-examine to show inaccuracies of memory, or express bias from passion or prejudice."

The jury had been instructed how to weigh the evidence of witnesses introduced upon the stand. A declaration made under conviction of impending death stands no higher

than evidence under oath. The jury must weigh the testimony of every witness by taking into consideration the reasonableness or unreasonableness of the statement of the witness; contradictions, if any, by his interest or lack of interest, his intelligence, and his position and situation to know the facts. Why should not the jury take into consideration these same things, and in fact all circumstances shedding light upon the reliability of a dying declaration? The fact that the jury was given instructions and rules for weighing the evidence of witnesses placed upon the stand, and that no instructions were given for weighing dying declarations, is itself calculated to induce the jury to give more evidential value to a dying declaration than it is entitled to. Juries are not practiced in weighing evidence, and are entitled to have given to them such guides as the law recognizes as proper to aid them in determining the weight to be given to dying declarations, certainly as much if not more than with respect to the evidence given in their presence.

The importance of giving such instructions is not questioned in this case, but the State contends that it was not error to fail to do so, especially as there was no request from the defendant.

In *Jollay's Case,* 130 Tenn., 309, 170 S. W., 58, 64, this court quoted with approval the very pertinent and sound statement from Prof. Wharton's text-book on Criminal Law, to this effect:

"Dying declarations have every element of dramatic evidence. As the last utterances of a sentient, conscious being, standing on the threshold of eternity, they possess

an impressiveness out of all proportion to their evidentiary value. In all homicide cases, the elemental passions are at any moment apt to override the judgment. A court may be judicial and impartial, and a jury dispassionate, up to the point where the dying declaration is admitted, and then find its impartiality and self-restraint seriously tried over the recital of the dying declaration."

We cannot overlook the very great importance in securing to one charged with homicide a fair and legal trial by his peers, of having the jury given the rules by which they are to weigh evidence which is calculated by its very nature, as a dying declaration is, to be given weight out of all proportion to its evidential value, when properly considered by the rules applicable thereto.

The court's charge is the safeguard of one accused, and is his guaranty that his trial will be protected by all the rules of law established in experienced judicial procedure for securing a fair and impartial trial.

It has been held by this court to be error not to instruct the jury with respect to circumstantial evidence, where the case is dependent entirely upon circumstances. It would of course not be error to fail to instruct the jury upon circumstantial evidence if there was direct evidence upon which the verdict could be rested, in the absence of a request, because in such case, it is not necessary for a conviction that a defendant's innocence must be excluded from every reasonable hypothesis deducible from the cirstances.

In the case of the weight to be given to dying declarations, it is fundamental that the jury shall know from the

court the methods which they are entitled to use and adopt in determining what weight ought to be given to them.

We conclude that the action of the trial court was prejudicial error upon which this case must be reversed and remanded for a new trial.

There is another assignment of error challenging the correctness of the trial court's charge upon the subject of self-defense. The complaint is that the court failed to charge the jury that the defendant might act under the circumstances as they appeared to him, and that it was erroneous to say, as the trial judge did say in his charge, that the defendant's belief must have been well founded, or under sufficient grounds or under sufficient circumstances.

An examination of the charge shows that it is in substantial accord with the decision of this court in the *Rippy Case,* 2 Head, 217, and in the *Allsup Case,* 5 Lea., 362, and other cases.

This assignment is therefore overruled.

It results from what has been said that the judgment in this case must be reversed, and the case will be remanded to the circuit court for a new trial.