Humphreys *v.* State.

(*Knoxville,* September Term, 1933.)

Opinion filed Nov. 18, 1933.

W. H. Norvell, for Minnie Humphreys.

Nat Tipton, Assistant Attorney-General, for the State.

Mr. Justice McKinney delivered the opinion of the Court.

Minnie Humphreys, plaintiff in error, was convicted of murder in the second degree; her maximum punishment being fixed at twenty years in the penitentiary.

Plaintiff in error admits that on January 4, 1933, she shot H. N. Helton with a pistol, but claims that she did so in defense of her life.

The State for a conviction relied to a considerable extent upon the dying declarations of Helton.

According to the record, as certified to this court, the trial court failed to instruct the jury as to the weight to be given the dying declarations of deceased. This is an error, for which the case must be reversed and remanded for a new trial. *Pearson* v. *State,* 143 Tenn., 385, 226 S. W., 538; *Crittendon* v. *State,* 157 Tenn., 403, 8 S. W. (2d), 371.

The State has suggested a diminution of the record, supported by the affidavit of the trial court, in which it was stated that the jury were instructed as to this matter, and a copy of that portion of the charge is made an exhibit.

This controversy grows out of the failure of the trial court to submit his entire charge in writing. This omission by the judges of the criminal courts of Hamilton

county has on previous occasions been a source of controversy and embarrassment, and is a practice that we cannot approve. While a written charge was waived, as an evidence of the disfavor with which such practice is held by the bar, we quote from the brief of counsel as follows:

"When this case was tried in the trial court and argument of counsel was concluded the trial judge thereupon, in the presence of the jury, inquired of counsel as to whether a written charge would be waived. The case having consumed two days and one night, and it then being around 4:30 on Friday afternoon, counsel knew full well that should a written charge not be waived that the trial judge would turn to the jury and tell them that it was the legal right of the defendant to a written charge and that he would have to adjourn court until Saturday morning in order that he might prepare his charge. Therefore, counsel feeling that the jury might resent being tied up another night, and that it would be charged (probably unconsciously) to the defendant, felt there was nothing to do but waive a written charge, and did so with the understanding that the charge be taken by the stenographer, Mr. M. O. Cate, one of the most reputable court reporters it has ever been counsel's privilege to come in contact with, counsel having been engaged in court reporting himself for twenty years. Mr. Cate's affidavit as to how the charge was taken, obtained from the trial court, and transcribed and placed into the bill of exceptions, will be found filed as an exhibit to the motion for a new trial, and made a part thereof."

We quote the following from the affidavit of Mr. Cate:

"At the conclusion of the argument, Mr. Norvell, of counsel for the defendant, upon inquiry from the Court,

waived a written charge with the understanding that I report the Charge of the Court.

"Thereupon I was informed by the Court that he would indicate to me what he was not reading from his manuscript and each time I was notified by the Court that he was not reading I made shorthand notes of his charge and later transcribed them as a part of the charge. The Jury retired to the Jury room to deliberate without a written charge, as same had been waived by counsel for the defendant.

"After the Jury reported their findings and the record was ordered by the defendant the Court turned over to me that which he had charged the Jury from his manuscript, which I placed in the record, along with the portions of the charge which the Court indicated to me that I should take in shorthand.

"The Court did not indicate to me, as shown by my notes and by the charge which I have written up and which appears in the record, that I should take anything on dying declarations and nothing was included in the manuscript which was handed to me by the Judge on that.

"I do not know whether the Court charged the Jury on dying declarations or not, as I have no independent recollection about the matter one way or the other; but have just stated in this affidavit the facts as they occurred."

The deputy clerk of the criminal court, in her affidavit, states that she copied everything into the record that was called for in the bill of exceptions.

The trial court, in his affidavit, states that, when the original bill of exceptions was handed to him, he wrote therein that the clerk would copy instructions as to dying declarations, attached such instructions thereto, but that

they became lost, were not copied into the transcript, and he files a copy thereof with his affidavit.

When this case was argued some weeks ago, this court had its clerk to write the clerk of the criminal court to send up the original bill of exceptions, but same has never been received. It will thus be seen that the matter is in hopeless confusion, and this court must dispose of the matter upon the record before it. The clerk certifies that nothing was omitted.

■ After a bill of exceptions has been signed and the court has adjourned, nothing can be added to or taken from it. *Steele* v. *Davis,* 52 Tenn. (5 Heisk.), 75; *Shelby County* v. *Bickford,* 102 Tenn., 395, 52 S. W., 772.

Section 11749, Code 1932, provides as follows:

■ "On the trial of all felonies, every word of the judge's charge shall be reduced to writing before given to the jury, and no part of it whatever shall be delivered orally in any such case, but shall be delivered wholly in writing. Every word of the charge shall be written, and read from the writing, which shall be filed with the papers, and the jury shall take it out with them upon their retirement."

This statute is valid and imperative. *State* v. *Missio,* 105 Tenn., 218, 58 S. W., 216; *Duncan* v. *State,* 66 Tenn. (7 Baxt.), 387; *Huddleston* v. *State,* 60 Tenn. (1 Baxt.), 109.

Failure to observe this statute constitutes reversible error. *State* v. *Becton,* 66 Tenn. (7 Baxt.), 138; *Newman* v. *State,* 65 Tenn. (6 Baxt.), 164.

■ The written charge may be waived by counsel for accused. *Hardwick* v. *State,* 74 Tenn. (6 Lea), 229; *State* v. *Becton, supra; State* v. *Bungardner,* 66 Tenn. (7 Baxt.), 163. In the last-named case it was said:

"In these cases the main question is, whether a de-

fendant can assign as error the failure of the judge below to give his charge in writing as required by the act of 1873, chapter 57, where the judge asked the counsel of the prisoner, in the presence of the jury, if he desired a written charge, and the counsel expressly waived it, agreeing to a verbal charge.

"While the statute is imperative on all the judges, and he is guilty of a failure of his duty when he does not write and deliver his charge in writing to the jury, and one that should be reprobated; and we add, while he ought not to ask the defendant to waive his performance of this duty, and is guilty of an impropriety in doing so, yet we hold, that when it appears the prisoner, by his counsel, has voluntarily and freely waived a written charge, and this led the judge to give a verbal charge, thereby assenting to what is done, and inducing such action, that he cannot be heard to assign it for error in this court."

The opinion in that case concludes with this statement: "It has always been a most serious practical objection to trial by jury, that, being unlearned in the law, unfamiliar with its technical language and its rules, juries are almost of necessity liable to have but an indistinct recollection of what was given them in charge by the court. This difficulty has been met by this statute, and, if complied with, juries may always certainly know and have before them, plainly written out, the rules of law which they are called upon to apply in the particular case.

"To maintain that the verbal charge should be given instead of a written one as required, is to maintain practically that uncertainty and want of clear apprehension of the rule to be applied, is preferable to its opposite, and that uncertain impression of the law as retained by the memory, is of more certain and easy application, and

will better conduce to the ends of justice, than a definite and clear understanding of the principle to be applied. This is an absurdity in reason, and has always been an evil in practice, and one which we are glad to see obviated by our Legislature. The fact that costs have been accumulated by failure to comply with the law is no argument against the statute, only against disobedience and disregard of it by the judges. Its strict observance has not, and will never make any additional cost to the State or anyone else. We hope to see no more violations of its mandates, or evasions of its plain requirements.''

■ Many reasons could be assigned as to why in a case of this magnitude a written charge is preferable to an oral one. It is sufficient to say that the Legislature sixty years ago deemed this a wise and salutary law, and has never seen fit to modify or repeal it. We feel constrained to hold that a waiver of a written charge in a felony case is not voluntary where counsel for the prisoner consents thereto in response to an inquiry by the court, in the presence of the jury, if a written charge is desired.

While it is regrettable that a case of this importance should be reversed without a consideration on its merits, the court cannot do otherwise where the accused has been convicted without a legal trial.

■ Upon another trial the court should also instruct the jury that such declarations should be received with caution. *Dickason* v. *State,* 139 Tenn., 601, 202 S. W., 922.

Numerous errors have been assigned as to the admission of incompetent testimony and improper argument by the attorney-general. We will assume that upon another trial no error of this character will be committed, and will not take the time to discuss these matters in this opinion.

Reversed and remanded.