WOOTEN *et ux. v.* STATE.

*(Nashville,* December Term, 1936.)

Opinion filed March 27, 1937.

R. E. HAYNES, of Franklin, for plaintiffs in error.

W. F. BARRY, JR, Assistant Attorney-General, for the State.

Mr. Justice Chambliss delivered the opinion of the Court.

Plaintiffs in error, a mother and a sixteen year old son, appeal from convictions of the mother of second-degree murder, with a sentence of ten years, and of the son of voluntary manslaughter, with a sentence of two years in the reform school, in the killing of John Barnes, a brother of Mrs. Wooten.

Brothers and a sister of Mrs. Wooten, a widow fifty-six years of age, living on her farm, objected to Mrs. Wooten's having one Henry Speck live in her home, because of talk and rumors of improper relations between the parties. Feeling had developed, directed particularly against Speck. Members of the family determined to go together to the sister's home and interview and remonstrate with her. They selected a Sunday night and arrived about 8 P. M. Mrs. Wooten had been expecting them and, resenting interference with her personal affairs, had made up her mind not to permit them to enter the house. She had sought and received advice that her home was her castle and that she might lawfully shoot, if necessary to prevent its invasion, and on this night she had lain down on a pallet with a shotgun beside her.

When the sister and her husband and a brother arrived they found the house dark. The sister called to Mrs. Wooten that they wanted to see her, and she told them to go around to the other door. There she met them and from inside the house told them she did not want to have any talk with them and refused them admittance. She conversed through the screen door, which was latched inside. At this point another brother, John Barnes, the deceased, came up and, pushing by the others on the

porch, forced the door open, accompanying this act with quite positive language of purpose to force an entrance. The boy fired the gun inflicting fatal wounds on John Barnes, his uncle. The weight of the evidence is that Mrs. Wooten called to him to shoot, and it is admitted that he had previously called out to his uncle in law that he would shoot him if he and the party forced an entrance.

Three principal grounds for reversal are urged, (1) that the evidence is against the verdict, mainly in that the homicide was justifiable as in lawful defense of the home, the defendant's "castle;" (2) that the court admitted proof of a dying declaration made by the deceased, and failed to charge the jury on the weight to be given this declaration; and (3) that the jury found Mrs. Wooten, shown by the proof to have been only an aider and abettor, guilty of murder, while finding the son, who fired the gun, guilty of the lesser degree of manslaughter.

■ ■ The broad rule invoked that one is justified in killing to prevent entrance of his residence against his protest is approved in this State in accordance with the weight of authority, subject to the qualification that the entrance is either with a felonious purpose to do bodily harm, or under circumstances justifying a reasonable apprehension of such purpose. *Hudgens* v. *State*, 166 Tenn., 231, 235, 60 S. W. (2d), 153. While argument is offered that facts show such violent purpose, or ground for apprehension thereof, we cannot accept this view. The previous relations of the parties do not sustain it; the close kinship rebuts it, and it is reasonably apparent from the facts and circumstances that the purpose, understood by Mrs. Wooten, was to remonstrate and pro-

test, for family reasons, with this sister against continuance of conduct reflecting on her reputation and the family name. However, it is plain that Mrs. Wooten indignantly resented this family interference in her personal affairs and would have none of it. This was, of course, her right. And it is quite clear that her passions had become inflamed by the insistence of these relatives upon coming into her home, over her determined protest, and forcing on her an interview on this unpleasant subject. There can be no doubt that she was greatly incensed over their implied accusation of misconduct on her part with this man, of which she claimed to be innocent, and that her resentment and anger were aggravated into passion by the conduct of these relatives in forcing their way, to the extent of breaking into her dwelling at an hour when her family in the house, her son and a married daughter then visiting her, had retired. (The man, Henry Speck, was not at the time on the premises.)

Conceding that the shooting was not justifiable homicide, or in self-defense, or in lawful defense of her home, it is inescapable that such passion in fact existed as to reduce the killing either (1) to second-degree murder, or (2) to voluntary manslaughter, dependent on whether or not her passion was engendered by adequate provocation. Under the rule, if the provocation is adequate, the offense is manslaughter; if inadequate, but existing, second-degree murder. *Dale* v. *State,* 18 Tenn. (10 Yerg.), 551; *Anthony* v. *State,* 19 Tenn. (Meigs), 265, 33 Am. Dec., 143.

Now the son, John Thomas Wooten, is convicted of voluntary manslaughter only, and this question is not pertinent as to him. Another question applicable to him is hereinafter considered.

As to Mrs. Wooten, we are constrained to the view that the passion under which, quite apparently, she labored is within the adequate provocation rule. Elaborating somewhat the circumstances already given, in the first place, the inflammatory issue of unlawful sex relationship was involved. If this widow of middle age was guilty of the conduct suggested, she would naturally be sensitive to interference; and, if not guilty, she would rightfully be fiercely aroused and particularly against those of her own close blood who accused her. In the second place, she was in her own home, the privacy of which she felt she had a right to protect against invasion by any persons for any purpose. This right of the home owner has always been jealously guarded; the natural instinct is to protect it to the uttermost and by every means. She stood in her own doorway and blocked its passage, and when the intruders, disregarding her protestations and warnings, using force, backed by numbers, broke their way in, it may well be conceived that her rage and passion controlled her conduct.

Provocation to passion such as the law deems reasonable and adequate to reduce a killing to manslaughter is thus defined in *Freddo* v. *State,* 127 Tenn., 376, at page 382, 155 S. W., 170, 172, 44 L. R. A. (N. S.), 659, in which case our previous holdings are reviewed: "A provocation of such a character as would, in the mind of an average reasonable man, stir resentment likely to cause violence, obscuring the reason, and leading to action from passion rather than judgment." And it is said that, "The law proceeds in testing the adequacy of the provocation upon the basis of a mind ordinarily constituted—of the fair average mind and disposition," citing *Seals* v. *State,* 62 Tenn. (3 Baxt.), 459; *Johnson* v.

*State,* 79 Tenn. (11 Lea), 47, and other cases. "If the circumstances be such as are calculated to produce such excitement and passion as would obscure the reason of an ordinary man and induce him, under such excitement and passion, to strike the blow that causes the death of the deceased, this will reduce the killing to manslaughter." *Toler* v. *State,* 152 Tenn., 1, at page 13, 260 S. W., 134, 137. In *Winton* v. *State,* 151 Tenn., 177, 268 S. W., 633, this court recognized that unlawful invasion of the home, although unaccompanied by a threat of personal violence, is calculated to excite anger, equivalent to passion, and afford reasonable provocation therefor. Mr. Wharton, in his Criminal Law, states the rule to be that "for the master of a house knowingly to kill a visitor, is murder." But he draws the distinction between such a killing in cool blood, which is murder, and in hot blood, which is manslaughter, and he excepts from criminal liability altogether a master who, on reasonable grounds, apprehends that the entrance is with a felonious or violent purpose. Volume I, sections 594, 595. And in sections 635 and 636 this learned author emphasizes the right of one to resist to the death an invasion of his home, "a man's house, however humble, is his castle, and his castle he is entitled to protect against invasion." But, he adds, this right "cannot be extended so as to excuse the killing of persons not actually breaking into, or violently threatening a house. Nor is killing justifiable for the prevention of a trespass or nonfelonious entrance when there is no attempt to force a way in against the owner's prohibition. In such cases the offense is manslaughter." We conclude that the conviction of Mrs. Wooten of a degree of homicide above manslaughter is not sustained.

The son, John Thomas, is guilty on the facts of manslaughter, of which he is convicted. He fired the shot. We deem it necessary to consider only two grounds of error assigned as to him, (1) the admission of the dying declaration, and (2) the failure of the trial judge to charge on this subject. The admission of the testimony is challenged on the ground that the deceased was not sufficiently shown to have apprehended immediate death at the time he made the declaration. We think his quite manifestly desperate wounds, of which he was aware, coupled with his statement, "Aint it awful I've got to die anyhow and can't even get a drink of water, and being shot down by that little boy," ample under the rule. *Crittendon* v. *State,* 157 Tenn., 403, 8 S. W. (2d), 371; *Dickason* v. *State,* 139 Tenn., 601, 609, 202 S. W., 922. It will be conceded that the omission of the trial judge of all reference to the dying declaration was error under the general rule. *Crittendon* v. *State, supra,* and *Pearson* v. *State,* 143 Tenn., 385, 226 S. W., 538. However, on the facts of the instant case, we do not feel called upon to reverse on this ground for this reason. It is plainly apparent that this error did not affect the result. The only statement in the dying declaration which goes to the facts of the killing is the incidental one above quoted, "being shot down by that little boy." There is no issue whatever on the record as to the fact that John Thomas shot the deceased. This testimony added nothing of probative value. Indeed, the reference to his slayer as "that little boy" quite probably emphasized the immaturity and comparative irresponsibility of John Thomas which was given effect in the light sentence visited upon him.

As the case must go back for another trial as to Mrs. Wooten, this opinion will not be further extended. Affirmed as to John Thomas Wooten. Reversed as to Mrs. Lou Wooten.