**STATE of Tennessee, Appellee,**

v.

**Julius Fate BRANAM, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

June 13, 1980.

Permission to Appeal Denied by Supreme Court Sept. 2, 1980.

Gordon W. Smith, Asst. Atty. Gen., Nashville, Richard A. Fisher, Dist. Atty. Gen., Cleveland, Steven Bebb, Asst. Dist. Atty. Gen., Sweetwater, for appellee.

Richard L. Banks, Cleveland, for appellant.

## OPINION

DAUGHTREY, Judge.

The appellant–defendant, Julius Fate Branam, was convicted of first degree murder in the shooting death of his son–in–law, Gary Burgess, and was sentenced to life imprisonment. On appeal he challenges (1) the admissibility of photographs of the deceased's body, (2) the admissibility of the deceased's extrajudicial statement as a dying declaration, and (3) the trial court's failure to instruct the jury on the weight to be given a dying declaration. We find no error and we therefore uphold the conviction.

There were no eyewitnesses to the April 28, 1979 shooting that resulted in Burgess's death. The proof showed that the defendant had visited two local pawn shops on that date in an unsuccessful attempt to buy a shotgun and a small caliber pistol. Branam finally went to a local gun dealer, from whom he purchased a 12–gauge shotgun, a quantity of shotgun shells, and a box of rifle slugs. According to the salesman, the only legitimate use for the rifle slugs was to shoot deer, the hunting season for which was not in effect at the time of the defendant's purchase.

Burgess was shot later that afternoon on a deserted rural road. Medical proof showed that he sustained a fatal wound from a rifle slug fired into the middle of his back at a distance of less than five feet. While still standing he was then shot in the left side of his back with gunshot pellets at a distance somewhat greater than five feet. Finally he sustained at least one and probably two multiple gunshot pellet wounds while lying on the ground.

The crime was discovered by a local resident who was driving through the area and saw Burgess stagger and fall in the road, wounded and bleeding. This witness went for help nearby. When a detective from the Bradley County Sheriff's office arrived at the scene, he found Burgess lying on the

ground, periodically jerking and rolling spasmodically in great pain. The detective, Danny Chastain, observed the victim's wounds and loosened his clothes in an effort to alleviate his distress. Burgess was having great difficulty breathing and he repeatedly asked Chastain to breathe into his mouth to help him get his breath. He also asked for his wife.

Chastain questioned Burgess about the shooting, and Burgess responded that his father–in–law had shot him, that he did not know why, and that the two of them had not been fighting. He told the detective where to find Branam, and then as Chastain noticed a marked change in Burgess's color and a glaze in his eyes, Burgess again repeated that Julius Branam had shot him. Still gasping for air, he died in the detective's arms before the arrival of medical assistance.

Branam was picked up by police at his home a short time later. Initially he denied knowing anything about his son–in–law's death. Told that Burgess had named him as his killer before he died, Branam changed his story and admitted shooting Burgess. He said that he and Burgess had had an altercation the night before which involved Burgess's wife, Barbara, who was also the defendant's daughter. After purchasing a new gun the next day, Branam said that he and Burgess went to a rural area to try it out. While there Burgess began "calling Barbara names," and he unexpectedly took a swing at the defendant. Branam said that he retaliated by hitting Burgess, that Burgess ran away from him, and that he picked up the shotgun, loaded it with a rifle slug, and shot Burgess in the back. He said he then reloaded the gun with a shotgun shell and fired again at Burgess. He told police that he shot Burgess because of the way Burgess was treating his daughter, Barbara.

At trial the defendant testified in his own defense, maintaining that he shot his son–in–law in self–defense after Burgess had called the defendant's dead wife a whore and struck the defendant. Branam said he struck back, whereupon Burgess "went for

his pocket." Branam testified that he simultaneously reached for his shotgun and fired at Burgess as Burgess was moving away from him.

■■■ The question of self–defense was one for the jury's determination. *Arterburn v. State*, 216 Tenn. 240, 391 S.W.2d 648, 653 (1965); *Hawkins v. State*, 527 S.W.2d 157, 160–61 (Tenn.Cr.App.1975). We have reviewed the photographs introduced at trial, and we find that they are probative on the question of self–defense because they are relevant to show that greater force was used against the defendant than is consistent with the defendant's account of the facts, *State v. Banks*, 564 S.W.2d 947, 949–50 (Tenn.1978), and because they corroborate medical testimony tending to refute the theory of self–defense, *Cagle v. State*, 507 S.W.2d 121, 132–33 (Tenn.Cr.App.1973). They are also relevant to show that repeated shots were inflicted, in order to support an inference of premeditation and deliberation. *State v. Bullington*, 532 S.W.2d 556, 560 (Tenn.1976). Moreover, we conclude that the probative value of the photographic evidence in question was not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *State v. Banks, supra*, at 951. In short, the photographs were not excessively gruesome or inflammatory, and thus it was not an abuse of the trial judge's discretion to permit their introduction into evidence.

■■ Nor do we find error in the trial court's decision to admit the victim's extrajudicial statements into evidence under the dying declaration exception to the hearsay rule. The detective who related his conversation with Burgess testified that in his opinion the defendant was aware that he was dying, even though he did not say so expressly, because of his condition and his repeated requests for respiratory assistance. As the witness described it:

  I feel like Mr. Burgess knew he was dying for the simple fact of the way he

was breathing and gasping for air, and the discoloration [and] his eyes became very glassy and glazed, and this may be a funny way of describing it, but it is like when a fish is out of water how they will just gasp for breath and then just keep getting slower before they die is the way he was gasping for air.

In making his ruling, the trial judge noted the difficulty of weighing the admissibility of "deathbed statements," saying:

When is an impending death known to a person and how do you know he knows it? Well, this case is unique in that the statements were made almost at the point of death, almost [coincidental] with the death, and the coloring of death had already begun while he was still making this statement. He literally was dying during the time of this statement . . . . I believe that inasmuch as the impending death was so close and that he was almost in the throes of death itself when he was still making this statement I believe he . . . was enough aware of what was happening that he told what he believed to be the truth . . . .

◼ Under Tennessee law, a dying declaration is admissible only upon a showing that the declarant was conscious of the peril of his situation and that he believed that his death was impending. *Nelson v. State*, 26 Tenn. 542, 543–44 (1847); see also *Dickason v. State*, 139 Tenn. 601, 605, 202 S.W. 922 (1918). As the defendant concedes, however, it is not necessary that the declarant have stated unequivocally his belief that his situation is hopeless. *Crawford v. State*, 197 Tenn. 411, 273 S.W.2d 689, 691 (1954); *Kilburn v. State*, 509 S.W.2d 237, 239 (Tenn. Cr.App.1973). Awareness of impending death may be inferred from the facts and circumstances, *Curtis v. State*, 82 Tenn. 502, 505 (1884); the language and condition of the declarant, *Hawkins v. State*, 220 Tenn. 383, 417 S.W.2d 774, 777 (1967); and the seriousness of the wounds, *Hawkins v. State, supra.* In this case, although the victim never made an express statement that he knew he was about to die, the circumstances as summarized by the detective who witnessed the statement and by the trial judge show that the declarant must have been aware of his immediately impending death. Under the authorities cited above, we find no abuse of discretion in the trial court's decision to admit the statement into evidence under the dying declaration exception to the hearsay rule.

◼ As the defendant points out in his brief on appeal, the trial judge failed to instruct the jury on the weight to be given the deceased's dying declaration either at the time of its admission or in the final charge. The State concedes that this normally constitutes prejudicial error even in the absence of a special request, under the authority of *Humphreys v. State*, 166 Tenn. 523, 524, 64 S.W.2d 5 (1933), and *Pearson v. State*, 143 Tenn. 385, 393–98, 226 S.W. 538 (1920). However, the State argues that in this case the defendant failed to raise the matter in his motion for a new trial, and that he is thus blocked from having it reviewed on appeal. See Rule 3(e), Tennessee Rules of Appellate Procedure. Under well–settled Tennessee law a trial judge will not be put in error upon matters not brought to his attention in a motion for a new trial. *Kirby v. State*, 214 Tenn. 296, 379 S.W.2d 780, 782 (1964); *Hendon v. State*, 489 S.W.2d 271, 274 (Tenn.Cr.App.1972). We therefore conclude that the issue is not properly before us on appeal.

◼ Moreover, even if this question were open to review on its merits, it appears that the defendant would have no valid grounds for relief, under the exception created by *Wooten v. State*, 171 Tenn. 362, 369, 103 S.W.2d 324 (1937). There the court held that the erroneous failure to instruct on a dying declaration in which the deceased named the defendant as the one who shot him did not warrant a reversal of the conviction where such error could not have affected the outcome of the trial, given the fact that there was no question that the defendant shot the deceased. In this case

there was no real dispute at trial as to the truth of the dying declaration that the defendant had shot his son–in–law in the back. This fact was established by the defendant's pre–trial statement to police and by his testimony at trial, and it was corroborated by medical testimony and photographs of the deceased. Thus, as in *Wooten*, the failure to instruct on the weight to be given the dying declaration was harmless at most, and cannot be said to create grounds for reversal of the conviction in this case.

The judgment of the trial court is affirmed.

DUNCAN and CORNELIUS, JJ., concur.