STATE of Tennessee, Appellee,

v.

Charles Walton WRIGHT, Appellant.

Supreme Court of Tennessee,
at Nashville.

Aug. 8, 1988.

Order on Petition For Rehearing
Aug. 29, 1988.

Kimberly Lynn Anne Hattaway, Asst. Atty. Gen., W.J. Michael Cody, Atty. Gen., Nashville, for appellee.

William L. Shulman, Metropolitan Public Defender, Gary Mason Jones, Sr. Asst. Public Defender, James L. Weatherly, Jr., Nashville, for appellant.

## OPINION

HARBISON,[1] Chief Justice.

Following a lengthy trial in Davidson County, Tennessee, appellant Charles Walton Wright was found guilty of premeditated murder in the first degree of Gerald Mitchell and Douglas Alexander. He was sentenced to life imprisonment for the murder of Mitchell and to death by electrocution for the murder of Alexander. After careful examination of the record, we affirm both the convictions and the sentences.

Testimony in the case was both protracted and conflicting. Appellant himself gave numerous conflicting and convoluted versions of the events which led to the homicides in the afternoon of July 18, 1984, in a public park in Davidson County, Tennessee. Appellant and both victims were residents at that time of Murfreesboro, in Rutherford County, Tennessee, although appellant had in the past resided in Nashville. Appellant and the victim Mitchell were, by appellant's own admission, involved in trafficking in illegal narcotics. Alexander may also have been involved. Their involvement was such that police officials in Murfreesboro had prepared a search warrant to search the residence of appellant for possession and sale of marijuana, but the warrant was never actually issued or served because of the homicides.

It appears without question that all three men came to Nashville in the afternoon of July 18, 1984, for the purpose of purchasing contraband narcotics with the intent to traffic therein.

At the trial, appellant admitted shooting and killing Mitchell and leaving the bodies of both Mitchell and Alexander in the public park. It was his contention that Mitchell had previously shot Alexander. The jury obviously concluded otherwise.

The homicides occurred in the late afternoon, probably around 6 p.m. Several persons in the park heard three shots. When the bodies were found, Alexander had been shot twice. One bullet penetrated his forearm, apparently a defensive wound, and then penetrated his face, entering at the corner of his mouth on the right side and being found lodged in the left cheek. This shot apparently did not cause death and would not necessarily have been fatal. The second shot was in the left rear portion of his skull. According to the only medical expert who testified, this shot would have produced unconsciousness instantly and death within a short time.

Mitchell was shot once, below the left ear. The medical expert testified that this shot would have produced unconsciousness immediately and death within a few minutes. The body of Mitchell was found face down on the top of a knoll in the park. The body of Alexander was some 50 to 60 feet away, downhill, and near the top of a flight of steps leading to the knoll from a small parking area below.

A vehicle later identified as that belonging to Alexander was observed being driven by a single occupant away from the park. The next day the car was found in Murfreesboro, and appellant admitted that he drove the vehicle from the park in Nashville to a park in Murfreesboro where he abandoned it. Appellant admitted borrowing a pistol from one Jessie King in Murfreesboro. Ballistics showed that this was the weapon from which the fatal shots were fired. Appellant admitted being in possession of the pistol after the homicide

---

1. This case was originally assigned to Chief Justice Ray L. Brock, Jr. for preparation of the opinion. After the oral arguments in the case, however, Chief Justice Brock retired. The case was subsequently reassigned for preparation of the opinion, and Chief Justice Brock did not participate in the final disposition.

and returning it to King. It was his contention, however, that prior to the homicide he had let Mitchell borrow the pistol. He said that Mitchell shot Alexander, and appellant then retrieved the pistol from Mitchell and shot the latter.

Appellant denied any involvement in the homicide for several days and gave highly misleading and false information to many witnesses who testified, as well as to investigating police officials. The numerous discrepancies in the various versions which he gave of the events of July 18 were explored in depth at the trial, including introduction at the instance of his own counsel of a lengthy and admittedly false statement given to the police.

It is not necessary here to review the convoluted and often confusing testimony. Essentially, appellant insisted that the three men had come to Nashville to purchase drugs and to sell them later in Murfreesboro. He admitted his own rather extensive involvement in illicit narcotics. Appellant said, however, that Mitchell knew the contact in Nashville from whom the marijuana was to be purchased. He testified that he did not accompany Alexander and Mitchell in making the purchase, although both he and Mitchell supplied substantial funds for the purchase. He remained where they let him out of the car. He said that when Alexander and Mitchell returned to pick him up in Alexander's automobile, they were quarreling. He testified that the drug transaction was only partly completed, and the parties were going to have to wait for about an hour to obtain the rest of the marijuana. Appellant testified that he suggested that they go to the park, which is located not far from the residence of appellant's mother, and that they proceed to bag such marijuana as had already been obtained. He said that Mitchell and Alexander went to the top of the knoll while he stayed in the car, that he heard two shots and then ran up the steps. There he found that Alexander had been shot by Mitchell. He took the pistol from Mitchell, struck the latter with his fist, and then shot him behind the ear.

It is clear that the jurors were not bound to accept this testimony, which was given at trial but which was markedly different from the numerous previous accounts which had been given by appellant. There was abundant testimony from which the jury could have found, as it did, that appellant committed both murders. The jury acquitted appellant of counts of murder committed in the perpetration of robbery in connection with each homicide, but it found that each homicide was premeditated murder in the first degree.

In the numerous issues presented on appeal by counsel for appellant, the sufficiency of the evidence to sustain the verdicts at the guilt hearing is not questioned and need not be further discussed in detail.

At the sentencing hearing the State announced that it would not seek the death penalty in the homicide of Mitchell. It was the theory of the State that Mitchell and appellant had had a quarrel over previous drug transactions. There was hearsay testimony, not objected to, that some children in the park had heard quarreling taking place just before the shots were fired in the present case. It was one theory of the State that appellant shot Mitchell as a result of this quarrel and then shot Alexander to eliminate him as a witness or to prevent appellant's apprehension and arrest. The other theory of the State was that the two homicides were intimately connected and that, regardless of the order in which they occurred, the second was committed while appellant was in the course of committing, attempting to commit or escaping from the first homicide.

Only two aggravating circumstances were relied upon by the State in its pre-trial notice that the death penalty would be sought. At the sentencing hearing the trial judge submitted both circumstances to the jury, the two provisions being T.C.A. § 39–2–203(i)(6), to the effect that the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the accused or of another, and T.C.A. § 39–2–203(i)(7), to the effect that the homicide was committed while the accused was engaged in com-

mitting, attempting to commit, or fleeing after committing another first degree murder.

The jury did not find the evidence sufficient to sustain the first of the foregoing statutory provisions but did find that the second was supported by the evidence. It found no mitigating circumstances sufficient to outweigh this aggravating circumstance and recommended the death penalty. The trial judge concurred in the conclusion of the jury.

■ In addition to the extensive testimony adduced both on direct examination, through cross-examination and in rebuttal at the guilt hearing, the State introduced one additional witness at the sentencing hearing. This was the medical examiner, Dr. Charles Harlan, who had already testified at the guilt hearing as to the positions of the bodies when he arrived at the scene on the evening of July 18, the nature and extent of the gunshot wounds, the results of his autopsy and the cause of death. At the sentencing hearing, Dr. Harlan ventured the opinion that the most probable sequence of events was that Mitchell was shot first and that the two shots which wounded, then killed, Alexander followed thereafter. The only real factual basis for this opinion, however, was that the body of Alexander was found downhill and on a lower level than that of Mitchell. Dr. Harlan admitted freely that other sequences could have occurred, including the sequence that Alexander was shot first and that Mitchell was then shot while fleeing the scene. Earlier Dr. Harlan had testified that none of the gunshot wounds was fired at point-blank range, all of them apparently having been fired from at least 24 inches or more from the bodies of the victims. This opinion was based upon the absence of stippling or powder burns upon either victim.

Counsel for appellant strenuously objected to the admission of the opinions of Dr. Harlan relating to the sequence of events as offered at the sentencing hearing. Dr. Harlan had told one of the attorneys for the appellant that his opinion was based more on logic than anything else and that it was not anything more than a personal opinion. Dr. Harlan agreed that he was not an expert in the reconstruction of crime scenes.

In our opinion, the trial judge erred in admitting Dr. Harlan's opinion as to the sequence of events. His testimony as to the nature and extent of the wounds and the effect of the gunshots upon the victims was obviously within the range of his expertise. His conclusion that Alexander was shot later than Mitchell was based on the assumption that Alexander had fled downhill. This conclusion is nothing more than speculation. Any police officer or other lay person could have ventured an opinion which would have been just as probative, and it would hardly be argued that an opinion from a lay witness on this subject would be admissible. *See Blackburn v. Murphy*, 737 S.W.2d 529 (Tenn.1987). Since the opinion was given by a highly qualified medical expert, the error was made even more egregious. We would order a new sentencing hearing if the jury had sustained the State's theory that Alexander was shot after Mitchell for the purpose of preventing the arrest or apprehension of appellant.

The jury, however, rejected this aggravating circumstance, T.C.A. § 39-2-203(i)(6). It did not recommend the death penalty thereon and found that this circumstance had not been established. Obviously, it gave no weight to Dr. Harlan's opinion, or at least insufficient weight to accept his theory.

The sequence of the two homicides was, and remains, speculative and uncertain. There was evidence from which the jury could have concluded that the murders occurred in the sequence urged by the State, wholly apart from the testimony of Dr. Harlan, but there was ample evidence from which it could have concluded otherwise.

Under the one aggravating circumstance which the jury did find, however, the sequence of death was not critical. The jury found, upon abundant evidence, that appellant committed both homicides. Under all of the proof, the two murders occurred practically simultaneously or, at most,

within a short time of each other. Even under appellant's own testimony as to the killing of Mitchell, that homicide occurred within a few seconds after Alexander had been shot. No witness testified to having heard more than three shots. Alexander was shot twice and Mitchell once. It is clear beyond a reasonable doubt that if appellant committed both murders, the second in time had to have been committed in connection with the commission of the first or while appellant was attempting to commit the first or fleeing therefrom.

Since the jury rejected the aggravating circumstance for which the testimony of Dr. Harlan was primarily offered, in our opinion the admission of that testimony at the sentencing hearing was harmless beyond a reasonable doubt. As previously stated, Dr. Harlan was forced to admit that his opinion as to the sequence of events was based more upon logic and deduction than upon any expertise, medical or otherwise. He was also forced to admit that other sequences were possible. While we are of the opinion that he should not have been allowed to suggest the probable sequence of events, in our opinion reversible error has not been shown.

■ For the same reason, we are of the opinion that the trial judge did not err in denying the request of counsel for appellant that they be permitted funds to employ an expert witness in the reconstruction of crime scenes. Numerous photographs of the bodies of the victims and of the terrain were introduced into evidence. There was no dispute as to the nature, extent or location of the wounds to the two victims. Both sides were free to argue, as they did, their theories as to whether appellant committed both of the homicides or only one of them, as he contended. Counsel for appellant have not demonstrated how a crime scene expert could have assisted in the development of their theory that Alexander was shot first and that appellant then shot Mitchell.

The issue presented by appellant with respect to the employment of an expert and with respect to the admission of the testimony of Dr. Harlan is overruled.

■ Appellant has assigned as error the refusal of the trial judge to give a requested jury instruction regarding "imperfect self-defense." Counsel requested an instruction, based on *Wooten v. State*, 171 Tenn. 362, 103 S.W.2d 324 (1937) that if the jurors did not sustain the theory of self-defense entirely, they still might find mitigating circumstances to reduce the homicide to manslaughter.

The trial judge declined this request, but he gave full instructions to the jury on the subject of self-defense and on the crime of manslaughter, both voluntary and involuntary. There was no objection to the charge as given, and, in our opinion, the requested instruction was fully covered therein.

■ Counsel for appellant have raised two issues regarding jury instruction at the sentencing phase. The first of these is the failure of the trial judge specifically to instruct on mitigating factors not listed in the death penalty statutes. The trial judge instructed the jurors that they might consider any circumstance offered in mitigation; but the trial judge refused specific instructions that particular facts or circumstances, not listed in the statutes, would constitute such mitigating factors for jury consideration.

The instructions given by the trial judge and his refusal to instruct specifically on non-statutory factors are in accordance with the previous holdings of this Court. We find no error. *See State v. King*, 718 S.W.2d 241, 249 (Tenn.1986); *State v. Hartman*, 699 S.W.2d 538, 550–551 (Tenn.1985).

■ The failure of the trial judge *sua sponte* to give to the jurors a definition of the term "mitigating circumstances" is assigned as error. Such an instruction is not mandatory in this state. *See State v. Groseclose*, 615 S.W.2d 142, 148 (Tenn.1981). In addition, the trial judge in this case told the jurors that mitigating circumstances would include, but not be limited to, the fact that the victim participated in the defendant's conduct and

any aspect of the defendant's character or record, or any of the circumstances of

the defense favorable to the defendant which is supported by the evidence.

■ The final issue regarding the jury instructions is the failure of the trial judge to redefine murder in the first degree at the conclusion of the sentencing phase. A full definition had been contained in the written instructions given to the jury at the conclusion of the guilt phase, and the jury had in fact returned verdicts of murder in the first degree as to both homicides. Failure to repeat that instruction in connection with the aggravating circumstance contained in T.C.A. § 39–2–203(i)(7) was not reversible error. *See State v. Carter,* 714 S.W.2d 241, 250 (Tenn.1986); *State v. Laney,* 654 S.W.2d 383, 388–389 (Tenn.1983).

■ Several other issues presented on appeal may be disposed of briefly. It is insisted that the trial judge improperly excluded at the sentencing hearing evidence that before trial the State had offered to accept a life sentence in these cases in return for a plea of guilt to murder in the first degree.

While there is no clear proof that such an offer was ever made, in our opinion refusal to admit testimony on this subject before the jury was proper. Such evidence is expressly precluded by Rule 11(e)(6), T.R.Cr. P. Further, such an offer by the State would in all events have been subject to approval by the trial judge before any plea bargain could have been consummated. In our opinion, the testimony was both irrelevant and inadmissible. It did not constitute admissible evidence of a "mitigating circumstance" as offered by the appellant.

■ Appellant insists that T.C.A. § 39–2–203(g) is unconstitutional because it mandates the death penalty and limits the discretion of the jury in imposing punishment where the mitigating factors do not outweigh the aggravating circumstances.

This Court has repeatedly considered this issue and has consistently upheld the constitutionality of the statute. *See State v. Teague,* 680 S.W.2d 785, 790 (Tenn.1984); *State v. Dicks,* 615 S.W.2d 126 (Tenn.1981), *cert. denied,* 454 U.S. 933, 102 S.Ct. 431, 70 L.Ed.2d 240 (1981). We do not deem it necessary to repeat here the earlier discussions of this statutory provision.

■ Appellant insists that the trial court erred in denying his motion to prohibit the "death qualification" of the prospective jurors. Both the Supreme Court of the United States and this Court have rejected this argument. *See Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *State v. McKay,* 680 S.W.2d 447, 450, 453–55 (Tenn.1984).

■ We find without merit the argument advanced by counsel for appellant that the mitigating circumstances in this case outweigh the aggravating circumstances. In this regard it is insisted that the evidence clearly showed that Alexander was a participant in the defendant's conduct, T.C.A. § 39–2–203(j)(3). According to the appellant's own testimony, however, Alexander had primarily furnished transportation and was not the instigator of the drug transaction involved in the case. All of the circumstances urged by counsel in mitigation were fully presented to the jury, including appellant's alleged remorse, lack of economic means in childhood, lack of education, etc. There was evidence from which the jury could have concluded that the appellant in cold blood shot both Mitchell and Alexander, escaped in Alexander's automobile, left the victims to die and abandoned their bodies, concealed the crimes and told numerous deceitful and misleading falsehoods concerning the circumstances of the crime. We find no merit to the argument that the mitigating circumstances outweigh the aggravating circumstance which was clearly established.

■ Also we find no merit in the argument advanced by counsel for appellant that acquittal by the jury of the felony-murder counts of the indictment precluded the State from seeking the death penalty under the statute prescribing the single aggravating circumstance which was found, T.C.A. § 39–2–203(i)(7).

The indictments in this case charged appellant with murder in the first degree of both Mitchell and Alexander. Alternatively, it charged him with murder in the perpe-

tration of robbery of each of these individuals. The jury acquitted appellant of the robbery charge. Nothing in that acquittal, however, precluded the State from going forward with proof that the murder of Alexander was committed in connection with or while appellant was attempting to escape from the murder of Mitchell under the death penalty statute. The language of the statutory aggravating circumstance is somewhat similar to the felony-murder statute, but the two are not identical. Acquittal of murder in the commission of robbery is in no sense acquittal of the aggravating circumstance of killing a second person in connection with the murder of a first.

The language of T.C.A. § 39-2-203(i)(7) in connection with commission of a second murder in connection with a first was construed by this Court in *State v. Pritchett*, 621 S.W.2d 127, 140 (Tenn.1981). There the Court said:

> However, we are confident that the Legislature intended that use, as an aggravating circumstance, of the crime of first degree murder listed in subsection (i)(7) would be limited to the murder or attempted murder, etc. of another person or persons while committing or attempting to commit, etc. the murder of the victim involved in the crime on trial. That is the way that this Court construes the subsection and so construed, we are of the opinion that it is constitutional.

In our opinion, the statute was properly applied by the trial judge and by the jury at the trial of this case. Appellant's issue, numbered "X" and all of its subdivisions, dealing with T.C.A. § 39-2-203(i)(7), are overruled.

■ Appellant has assigned error with respect to the jury selection, especially the alleged extensive rehabilitation of prospective jurors by the trial judge.

The jury examination in this case consumed several days and comprises ten volumes of the transcript. We have examined each of the instances in which appellant contends that the trial court erroneously excused jurors for cause, and in each instance we find that the trial judge carefully and conscientiously considered the answers of the jurors. We find no error under the principles of *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), or *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). *See also State v. Williams*, 690 S.W.2d 517, 522–523 (Tenn.1985).

In our opinion, the trial judge properly controlled the scope of the voir dire proceedings and committed no error in the exclusion or refusal to exclude individual members of the panel.

■ Appellant has presented numerous issues regarding alleged prosecutorial misconduct at both the guilt and the sentencing hearings. We have examined each of these and find no merit therein. We find almost superficial the argument of counsel for appellant that the prosecutors referred to the defense offered by appellant as "concocted." This was certainly a legitimate argument in view of the admitted numerous false statements which appellant had given to a great many witnesses. Like the trial judge, we find no improper reflection upon defense counsel. The State simply argued that appellant, after having learned that the State's proof would be, attempted to manufacture a story which would not conflict with irrefutable evidence in possession of the prosecution.

■ We have considered each of the numerous arguments advanced by counsel for appellant in connection with alleged misconduct by the prosecution, and we find none of these to contain merit or to warrant reversal. In many instances there was no objection, and in most instances the remarks of counsel for the prosecution were in response to arguments advanced by the defense.

It is clear that counsel for the State erred in requesting "Jencks statements" of the defendant himself before entering upon cross-examination. The trial court immediately sustained the objection of counsel for the defense, however, and instructed the jury that the State would not be entitled to any such statements.

The trial judge carefully monitored the conduct of counsel for both sides in this case, and we are unable to conclude that any of the alleged remarks or action by prosecuting attorneys affected the results in this case.

■ During the course of the presentation of their case-in-chief, counsel for appellant discovered that one of their witnesses, Jackie King, was hospitalized. They sought and obtained permission from the trial judge to take his deposition pursuant to Rule 15, T.R.Cr.P. The deposition was duly taken, and its contents were apparently extremely disappointing to counsel for appellant. They stated to the trial judge that the witness had "changed" his testimony, and they concluded not to use the deposition as part of the defendant's case-in-chief. The State then announced that it would use the deposition in rebuttal. Counsel for appellant objected, apparently contending that the deposition was taken at their instance. They also insisted that they had not been permitted to lead or cross-examine the witness as they would be permitted to do if the State had taken the deposition and they had been permitted to cross-examine.

Thereupon the trial judge directed that the deposition be resumed and that counsel for the defendant be permitted to examine the witness as upon cross-examination. This action was taken, and the State introduced both the original deposition and the supplemental deposition in rebuttal.

The witness King, a homosexual partner of appellant, contradicted the testimony of appellant in several material respects and furnished strength to the argument of the State that the appellant had materially changed his version of the facts in a number of significant ways.

The deposition, once taken pursuant to court order, of course, did not "belong" to either party. It was taken for use in evidence and was subject to the rules of evidence. We find no merit in the insistence of appellant that the State was required to retake the initial deposition in its entirety after the defense had already done so. Any rights of the defense were fully protected by the procedure which was followed by the trial judge, and we find no error in connection with the deposition of the witness King. The two deposition sessions were videotaped, and the jury was afforded every opportunity to see and observe the manner and demeanor of the witness as well as to hear his testimony.

■ During the initial deposition of King, the prosecuting attorney asked him about cocaine use by appellant Wright. The State intended to eliminate this portion of the testimony when the videotaped deposition was played to the jury. By inadvertence the operator did not totally block out each of the questions asked the witness or one of the answers. The trial judge instructed the jury to disregard the one answer which was given, however, and we find no reversible error in the action of the trial judge in declining to declare a mistrial.

The fact that appellant may have used drugs could hardly have been a surprise to the jury. The deposition was played after appellant himself had testified and had explained in detail his extensive involvement in illicit drug traffic and numerous transactions in which he and Mitchell had gone to Nashville for the purpose of purchasing drugs.

The cautionary instructions given by the trial judge were adequate, and no reversible error occurred in connection with the deposition of this witness.

■ We have considered all of the extensive arguments advanced by counsel for appellant who have most zealously and thoroughly briefed and argued this case. We are of the opinion that the verdict of the jury was fully sustained by the evidence. Our independent review of the record convinces us that the death penalty was not disproportionate in this case and was not the result of any arbitrary or improper action by the jury.

The convictions of appellant are sustained. The execution of appellant will be carried out as provided by law on October

20, 1988, unless stayed by further orders of this Court or other appropriate authority.

FONES, COOPER and DROWOTA, JJ., concur.

### ORDER ON PETITION FOR REHEARING

On August 18, 1988, a petition to rehear was filed on behalf of appellant. After consideration of the petition, the Court is of the opinion that the same is not well taken and it is accordingly denied at the cost of the appellant.

The motion to stay execution is denied, without prejudice, however, to the right of counsel to seek a stay in the event a petition for certiorari to the United States Supreme Court is filed.