**Floyd Joe KILBURN, Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Dec. 28, 1973.

Certiorari Denied by Supreme Court
April 15, 1974.

Fred Robertson and William B. Black, Tiptonville, for plaintiff in error.

David M. Pack, Atty. Gen., Weldon B. White, Jr., Asst. Atty. Gen., Nashville, Fleming Hodges, Dist. Atty. Gen., Othal Smith, Jr., Asst. Dist. Atty. Gen., Dyersburg, for defendant in error.

## OPINION

DWYER, Judge.

From an involuntary manslaughter conviction by a jury with judgment pronounced thereon, this appeal flows, with two basic assignments of error pertaining to the admission into evidence of a dying declaration and the statement of the youthful defendant. The punishment as assessed by the jury was confinement in the county jail for 11 months and 29 days.

This tragedy occurred in a residence located near Owl City, in Lake County, on September 26, 1971, around 1:30 p. m. The young female victim was thirteen years of age and was visiting in the home of the defendant, playing and dancing with his sister.

There are two versions of this homicide as reflected by the evidence from our re-

view. The little nine-year-old brother of the victim testified that the defendant, immediately prior to the shooting, had threatened him. His sister, the decedent, told him to leave. He then heard the defendant ask his sister if she "was going to give him some" and then he heard a shot.

The doctor who attended the young victim at the hospital related that she had suffered a gunshot wound to the right hip; that she was in shock and they had administered eight bottles of blood to her, and that she was then taken to surgery. The next day when the wound started bleeding again she was returned to the operating room.

This shooting occurred on a Sunday and the following October 3, she told the doctor that she was going to tell the truth; that the defendant had told her that if she did not let him rape her he was going to shoot her; that she had told him no; and that he had shot her. This statement was testified to by the nurse and the sheriff and, over objection was admitted into evidence.

The state's proof further reflects that the deputy, arriving at the home and finding the little girl on the floor, inquired as to what had happened. The defendant stated then that his sister and the deceased had had the record player on and had been dancing and that he had reached up, gotten down his shotgun and that it went off and that he had accidentally shot the little victim. This statement was admitted by the trial court over objection.

The evidence further reflects that later in the week the sheriff went to the home of the defendant and took him to the jail where he questioned him. The sheriff advised the young defendant before questioning in the following form:

"I advised him of his Constitutional Rights; that he didn't have to make any statement to us if he didn't want to; and that he didn't have to make any statement unless counsel was present, or at any time during the questioning if he desired counsel, why, and counsel would not be furnished by the County but he would have a chance to get counsel any time during the questioning; that anything he said might be used against him in a court of law."

The young defendant then proceeded to detail three versions of the event: (1) that he was going squirrel hunting, had laid the gun on the bed and in attempting to get other shells the gun went off and shot the little girl; (2) that the gun was by a window, he brought it over to the bed and, while cleaning it, it went off; and (3) that he had the gun, went into the house, it was breached open and he had a shell out and was attempting to put the shell back in a shell belt and it must have gotten into the gun and, when he sat down on the bed and pulled the hammer back, the gun went off, striking the little girl. This oral statement was objected to and is the basis for one of the assignments.

The proof reflects that the death weapon was a single barrel Stevens .20 gauge shotgun.

The young defendant testified and denied making any threats to the little brother of the decedent. He further denied any threats or sexual motivations towards the little girl. His version was that he decided to go squirrel hunting, had his shotgun and had cleaned it while sitting on the bed; that the little girl and his sister were dancing in the room and the little girl asked to see one of the shotgun shells; that he gave her a shell, put the gun on the bed, left the room to put his cleaning gear up and when he came back he saw the gun on the bed, picked it up and was wiping oil off the hammer when it fired, striking the little girl.

The little victim died on October 5, 1971, and from the medical testimony death was attributable to the gunshot wound with peritonitis having developed.

There are two assignments of error. By the first assignment he contends that the

trial court erred in admitting into the evidence, over objection, the statement of the decedent made two days before her death. He urges that there was no statement from the decedent acknowledging impending death and that the doctor still expressed hope for her recovery.

■ We do not think that actual acknowledgment of impending death by the decedent is an absolute to the admission of the statement. We think this facet of the distinction from the hearsay rule may be gathered from the circumstances. See Beard v. State, Tenn.Cr.App., 485 S.W.2d 882, 885. From the nature and extent of the wound on the body of the little thirteen-year-old girl and also from the fact that she was in considerable pain and showing concern the next day about her fingernails turning blue, we are satisfied that she was aware of her critical condition. We also note her assertion, prior to her disclosures about the incident to the sheriff, that she wanted to tell the truth about the shooting. We think that from these circumstances a reasonable inference may be taken that the youngster had an awareness of her death. See Anthony v. State, 19 Tenn. (Meigs) 265, 279, 280. We do not think that the trial court abused its discretion in allowing the evidence to be admitted. See Dickason v. State, 139 Tenn. 601, 607, 202 S.W. 922. The assignment is overruled.

■ He lastly contends that the trial court erred in admitting the conflicting exculpatory statements of the defendant into evidence because of the totality of the circumstances: (1) The defendant asserts that the admissions should not be introduced into evidence, his being a juvenile and without parents and counsel at the time they were made. We think these facts are not controlling, but rather they are for the trial court to consider in his hearing, out of the presence of the jury, on the voluntariness of the statement and on compliance with *Miranda* warnings. We further note that at the time the sheriff took the young defendant into his custody his parents were at home and the sheriff told them where and for what reason he was taking the youngster to jail. The fact that he was a juvenile does not preclude, as a matter of law, the taking of a free and voluntary statement from him in the absence of an attorney or parents. See O'Neil v. State, 2 Tenn.Cr.App. 518, 455 S.W.2d 597, 603. (2) He claims that his statement, at the time of the shooting, to the deputy who arrived on the scene, inquiring as to what had happened should be inadmissible. At that time, the young defendant stated that he had accidentally shot the little girl after he had gotten the gun down, had laid it on the bed and as he was reaching for some shells. This is and was a volunteered statement by the youngster, not then in custody, with no accusation having been made by the officer. See Gordon v. State, Tenn.Cr.App., 478 S.W.2d 911, 914. (3) He states that the sheriff's admonition that counsel would not be furnished by the county negates the admissibility of the evidence. We think that this was an unfortunate statement by the sheriff. However, where, as here, he was not an indigent we do not think that this excerpt would be fatal. The assignments pertaining to the statement are accordingly overruled.

However, in closing we do not think that a youngster of fifteen years of age at the time of this tragedy should be incarcerated with criminals. We are bolstered in this conclusion by the verdict of the jury evincing that the killing was unintentional and done for want of caution. See Lee v. State, 41 Tenn. (1 Cold.) 62, 67.

It therefore appears to us that T.C.A. § 37–234(f) may be applicable. However, we have treated his assignments and find as a matter of law they are without merit.

We therefore affirm the judgment of the trial court.

O'BRIEN, J., concurs.

GALBREATH, Judge (concurring in part and dissenting in part).

I agree with the majority that a youngster of fifteen years of age should not be

incarcerated with criminals, subject to certain restricted exception such as having been declared incorrigible. Not only do I agree with the majority, but more importantly so does our Supreme Court, but that Court goes further and says, in effect, that he cannot be so punished.

In Greene v. State, 210 Tenn. 276, 358 S.W.2d 306, the minor defendant was, as the young defendant in this case, charged with a capital offense but was convicted of a lesser included offense, again parallel to the history of this case. Pointing out that the acquittal of the offense that forced by statute the treatment of the child as an adult eliminated the basis for such treatment, the Supreme Court logically held:

> "[W]hen it is shown that some crime other than those excepted in the statute has been committed the trial judge should then remand the child to the Juvenile Court where proceedings may be had under Juvenile Court law, that is, whether the child is incorrigible or not under such circumstances and under the statute."

It cannot be supposed that the modifications in our juvenile statutes since the Supreme Court spoke to this issue, modifications designed to insure more humane treatment of children accused of crime than formerly, would in effect accomplish the opposite and permit a much more harsh disposition of a juvenile found guilty of an offense not set out by statute as removing the cloak of insulation than would have been permissible before the updating of our juvenile statutes.

The only reason the defendant was tried as an adult was that the juvenile court found that there was probable cause to believe he had committed murder in the first degree. It has now been established that he did not, and under the rule laid down in *Greene*, jurisdiction reverts to the juvenile court for such disposition as that court deems proper under the Juvenile Court Act. If the judge there finds that the youngster is incorrigible, he can order

him confined in the penitentiary as in the case of other children who commit non-capital crimes who are incapable of being rehabilitated. If the defendant is found to be corrigible, then confinement in a juvenile institution or such probation as appears proper to the juvenile judge should follow.

Inasmuch as I feel bound by the Supreme Court to apply their recent holding under the exact circumstances of this case, I must respectfully dissent from the result reached by the majority to the limited extent dealt with in this opinion.