**William Columbus FLOYD, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 1, 1979.

Walker Gwinn, Charles C. Burch, John C. Hough, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Robert A. Grunow, Asst. Atty. Gen., Nashville, Don D. Strother, James W. Harrison, Asst. Dist. Attys. Gen., Memphis, for appellee.

## OPINION

DAUGHTREY, Judge.

This is an appeal by William Columbus Floyd from his conviction of second degree murder, for which he received a sentence of life imprisonment in the state penitentiary. On appeal he challenges (1) the sufficiency of the evidence to support the jury's ver-

dict, (2) the admissibility of the victim's deathbed identification, (3) the admissibility of the testimony of several of the State's witnesses, and (4) the trial court's procedure in supplying a list of prospective jurors. We find no reversible error in the record, and we therefore affirm the conviction.

Mr. John R. Edwards, Jr. was shot in the abdomen and twice in the leg on June 27, 1977, as he left a small insurance company office in Memphis, Tennessee. He died in the intensive care unit of a local hospital two days later, but not before he had identified the defendant from a display of five photographs and told a police officer what occurred at the time he was shot. According to Edwards' statement, he had just gotten into his pickup truck when he was approached by a man he identified as Floyd, who pulled a gun on him and told him to "get over." Edwards told his assailant that he might as well shoot, that he, Edwards, was not going to let himself "get driven away and left for dead." Edwards apparently grabbed for the gun and was shot three times. A pathologist testified at trial that the cause of death was a gunshot wound to the abdomen, and that all three wounds were compatible with wounds caused by a .38 caliber weapon.

The evidence in this record clearly establishes the defendant's guilt. In addition to his identification by the victim, there was testimony by witnesses at trial that immediately prior to the shooting, Floyd had been driven to a location very near the scene of the crime and that after the shots were fired, he returned to the same car, which was then located approximately one block from the scene of the shooting. At that time the defendant was in possession of a pistol and after getting in the car he said that he had just shot a man. Moreover, later that day Floyd attempted to sell a .22 or .38 caliber pistol to an acquaintance for $10. Some two or three days following the homicide, he told another witness that he had just "missed" getting a "wad of money" and sought funds from this individual to "get out of town." The defendant admittedly left Memphis to avoid apprehen-

sion and thus was not arrested for almost three months after the crime, at which time he attempted to run from uniformed police officers who were seeking to arrest him. We are satisfied that the evidence summarized above overwhelmingly establishes the defendant's guilt of second degree murder.

However, the defendant insists on appeal that substantial portions of the proof adduced at trial were improperly admitted into evidence. His major challenge is to the hearsay nature of the victim's deathbed statements, including his identification of Floyd as his assailant. The trial judge ruled that these statements were admissible under the dying declaration exception to the hearsay rule. After a careful examination of the record, we conclude that this determination was legally correct.

The defendant argues that the victim made no statement evincing an awareness of impending death, nor did he indicate that he realized that there was no hope for his recovery. However, the proof shows that on the day after he was shot and underwent extensive surgery, Edwards was conscious and alert, although in pain. His wife testified that she remarked to him that he had received so many transfusions that he "was going to have some of everybody's blood in Memphis," to which the victim responded, "I don't think it's going to do me a bit of good." Although the family tried to bolster Edwards' will to survive, upon his sister's inquiry into the state of his salvation, and specifically as to whether he was prepared to "meet his Maker," the victim replied in the affirmative. He also indicated to his sister that he was depending on her to see that justice was done in his case because he "might not be here to do it himself." Finally, the deceased victim's physician testified that Edwards' injuries were so severe that a person in his condition would be instinctively conscious of the imminence of death. The doctor said, however, that he did not discuss the high probability of death (which he estimated at 75% and increasing as time went on) with Edwards, because he did not want to cause his patient to "just give up and die" if there was any possibility at all of his recovery.

■ Under Tennessee law, in order for a decedent's statement to be admissible as a dying declaration, the declarant must have had an awareness of his impending death at the time the statement was made. *Hawkins v. State*, 220 Tenn. 383, 417 S.W.2d 774 (1967). However, there need be no explicit acknowledgement by the victim of his hopeless condition, if a reasonable inference of his awareness can be drawn from all the circumstances of the particular case. *Kilburn v. State*, 509 S.W.2d 237 (Tenn.Cr.App. 1973). We conclude that this was the case here, and we find no abuse of discretion in the trial court's decision to admit the testimony of various witnesses concerning Edwards' deathbed statements implicating the defendant in the homicide.

■ Nor do we find any merit to the remaining issues raised on appeal. The two State's witnesses declared hostile by the trial court clearly caught the prosecutors by surprise when on the day of trial they presented testimony which was inconsistent with numerous pre-trial statements they had given to police and members of the District Attorney's staff. Their knowledge of the crime was material, and the State was properly permitted to attempt to develop their testimony through the use of leading questions. *King v. State*, 187 Tenn. 431, 215 S.W.2d 813 (1948).

■ Although we conclude that the testimony of the decedent's sister was admissible to show his state of mind, it must also be noted that this issue was primarily relevant to the determination of the admissibility of the victim's deathbed statements as dying declarations, a foundational matter decided by the trial judge outside the presence of the jury. The defendant insists that the witness's later testimony before the jury that she assured her dying brother that she would see "that justice was done" had no value except to inflame the jury against the defendant. We believe that once the foundation had been laid for the introduction of the decedent's statements, the relevance of this testimony was marginal at best, and we recognize the emotional appeal inherent in it. However, in view of the overwhelming proof of Floyd's complicity in the homicide, we cannot say that the outcome of the trial would have been different had the testimony not been presented to the jury, and we thus conclude that any error in this regard was harmless. See Rule 36(b), Tennessee Rules of Appellate Procedure.

■ Finally, we find that the trial judge substantially complied with Rule 24(g) of the Tennessee Rules of Criminal Procedure, which requires that upon request the parties must be furnished with a list of prospective jurors. Although not all of the information mandated by the rule was turned over to defense counsel until the day of trial, the court gave the defendant's attorneys adequate time to review the jury list and permitted them to conduct wide-ranging voir dire. In addition, the defendant's appellate counsel concedes in his brief that no substantial injury was incurred by his client as a result of the procedure followed by the trial judge. We therefore hold that any technical error under Rule 24(g) was at most harmless. Tennessee Rules of Appellate Procedure, Rule 36(b).

Finding no reversible error, we affirm the judgment of the trial court.

WALKER, P. J., and O'BRIEN, J., concur.