# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00485-CV

**Robert Hanselman, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

**FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT
NO. 2008-1174, HONORABLE WILLIAM HENRY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Robert Hanselman appeals the district court's order terminating his parental rights to his four children following a trial before an associate judge. *See* Tex. Fam. Code Ann. § 161.001 (West Supp. 2010). In three issues, Hanselman challenges the factual sufficiency of the evidence supporting the two predicate grounds for termination of his parental rights, contends that both the associate judge and the district court erred by denying his motions for continuance, and raises a complaint about the guardian ad litem's testimony. We affirm the district court's order terminating his parental rights.[1]

*Background*

Hanselman is the father of four children, S.M.H., D.L.H., S.N.H., and T.A.H. The Texas Department of Protective Services ("the Department") filed a petition seeking, among other

---

[1] The biological mother of the four children is Chrystal Prillerman. Prillerman voluntarily relinquished her parental rights before trial.

things, to terminate the parent-child relationship between Hanselman and each of the children. The presiding judge of the district court referred the case to an associate judge who set the case for trial on November 7, 2008. Hanselman objected to the referral and moved for a continuance. The stated grounds for the requested continuance were Hanselman's desire to complete a drug rehabilitation program prior to the trial date and the recent appointment of Hanselman's trial counsel. At a pretrial hearing on October 24, 2008, the associate judge overruled the objection to the referral because it was untimely filed, granted the motion for continuance, and reset the trial for December 5, 2008.

On November 21, 2008 the parties again appeared before the associate judge for a pretrial hearing. At that hearing, Hanselman's counsel again moved for a continuance on the ground that Hanselman needed "more time to do his services" including drug treatment. The associate judge denied the motion.

The case was tried to a jury beginning December 15, 2008. The Department alleged, and the jury found by clear and convincing evidence, that either or both of the following statutory grounds for termination existed: (1) Hanselman had knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, and (2) Hanselman had engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical and emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E) (West Supp. 2010). The jury also found that termination was in the children's best interest. *Id.* §161.001(2). In accordance with the jury's verdict, the associate judge issued a report in the form of a proposed judgment terminating Hanselman's parental rights. This report gave Hanselman notice that, under family code section 201.015, he had a right to request a

de novo hearing before the referring court to challenge the jury's findings and the associate judge's recommendation. *Id.* § 201.015 (West Supp. 2010).

Hanselman requested a de novo hearing, and the hearing was set for March 5, 2009. On that day, counsel for Hanselman filed a written motion for continuance on the ground that he had learned the previous day that Hanselman was incarcerated, and that "he had operated under the notion that for Mr. Hanselman's appearance at this March 5, 2009 de novo review, Mr. Hanselman would be able to appear free of incarceration, or at worst appear via a bench warrant from the Hays County jail." Hanselman's counsel asserted that his client was "entitled to appear for this de novo review as this represents a final hearing in a termination trial." Although the record does not include an order disposing of this motion for continuance, the de novo hearing did not take place until April 21, 2009. Hanselman was present and testified at the hearing. After the hearing, the district court resolved all of the issues raised in Hanselman's request for de novo review in the Department's favor and adopted the associate judge's proposed judgment terminating Hanselman's parental rights. This appeal followed.

### Discussion

To terminate parental rights, the Department has the burden to prove at least one of the predicate grounds in family code section 161.001(1) and that termination is in the best interest of the child. *See id.* § 161.001(1), (2); *In re A.V.*, 113 S.W.3d 356, 363 (Tex. 2003). The Department sought termination based on two predicate grounds. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E). Having found that the Department proved by clear and convincing evidence at least one of the two predicate grounds, and that termination was in their best interest, the jury

answered "Yes" to the question of whether the parent-child relationship between Hanselman and each of the four children should be terminated. On appeal, Hanselman does not challenge the finding that termination was in the children's best interest, but contends that the evidence was factually insufficient to support either of the two predicate grounds alleged by the Department. *See id.* § 161.001(1)(D) (knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being), (E) (engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical and emotional well-being). Hanselman also asserts that both the associate judge and the referring district court erred in denying his requests for a continuance. Hanselman further contends that the guardian ad litem failed to discharge her statutory duty to represent the children's interests because she failed to ask them whether they wished to maintain a relationship with their father. Hanselman claims the alleged deficiencies in the investigation and the failure of the guardian ad litem to fulfill her statutory duties caused him irreparable harm because her testimony did not include the statement that the older children desired to maintain a relationship with him.[2]

### *Motion for Continuance*

The decision to grant or deny a motion for continuance is within the trial court's discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). We will not disturb a trial court's order denying a motion for continuance unless the trial court has committed a clear abuse of

---

[2] As briefed, Hanselman's issue presents nothing for review because it is not a properly preserved assertion of trial court error. *See* Tex. R. App. P. 33.1. However, because we construe briefs liberally to obtain a just, fair and equitable adjudication of a litigant's rights, we will construe Hanselman's third issue as an assertion that the trial court erred by permitting the guardian ad litem to testify.

4

discretion. *Id.* A trial court "abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985).

To show an abuse of discretion, Hanselman relies on family code section 161.2011(a) which provides that a parent whose rights are subject to termination and against whom criminal charges are filed that directly relate to the grounds for which termination is sought may move for continuance of the final trial until the criminal charges are resolved. *See* Tex. Fam. Code Ann. § 161.2011(a) (West Supp. 2010). The statute provides that the court may grant the continuance only if it finds that a continuance is in the best interest of the child. *See id.* Hanselman contends that because eight felony counts of child endangerment were filed against him at the time of trial, he was entitled to a continuance. However, the record reflects that Hanselman never requested a continuance of any proceeding on this ground.

In his first motion for continuance, Hanselman's counsel requested that the trial set for November 7, 2008 be continued in order to permit Hanselman to complete a drug rehabilitation program before the trial started. The associate judge granted this motion and reset the trial for December 5, 2008.[3] The associate judge considered Hanselman's second motion for a continuance at a November 21, 2008 pretrial hearing. The basis for this motion for continuance was to give Hanselman more time to "do his services" with "the drug treatment being the most profound one." The associate judge denied the motion stating "while I can appreciate that you want more time, sir,

---

[3] At the hearing the associate judge noted that Hanselman had made no effort to enter inpatient rehabilitation until October 10, 2008, and consequently she was not granting a continuance to give him more time to finish his rehabilitation program before trial. She did, however, grant the requested continuance in order to provide Hanselman's appointed counsel time to prepare for trial.

5

I'm not willing to do that at the expense of these children anymore." This second motion for continuance did not refer to the pending criminal charges or seek a continuance pursuant to family code section 161.2011(a). Hanselman filed a third motion for continuance on March 5, 2009, the date the case was set for a de novo hearing before the referring district court. This motion stated that counsel for Hanselman anticipated that Hanselman would be "able to appear free of incarceration, or at worst appear via a bench warrant from the Hays County jail," but instead Hanselman had been transferred to a Travis County jail facility where his counsel could not locate him. As grounds for a continuance, the motion states: "Mr. Hanselman is entitled to appear for this de novo review as this represents a final hearing in a termination trial. Neither Mr. Hanselman nor his attorney had knowledge or control as to his remaining in the Hays County jail, being moved to the Travis County Jail, nor being moved within the Travis County Jail system."[4] The third motion for continuance, like the first two, did not seek to continue the hearing pursuant to family code section 161.2011(a).

Hanselman's argument on appeal does not match the grounds asserted in any of his three motions for continuance. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific ground for the desired ruling, if it is not apparent from the context of the request, objection, or motion. *See* Tex. R. App. P. 33.1(a). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991). Hanselman did not request that the associate judge or the referring court continue his trial pursuant to family code section 161.2011(a), or even

---

[4] This motion cites to several cases Hanselman's counsel contends support his argument that an "imprisoned parent [is] entitled to be present at the final termination hearing and have the opportunity to testify."

6

on the more general ground that criminal charges of child endangerment had been filed against him. Consequently he has waived his right to raise this complaint on appeal. Even if Hanselman had made and preserved this complaint, however, we would overrule this issue. The statute permits a "continuance of the final trial in the suit until the criminal charges are resolved." *Id.* In the present case the child endangerment charges against Hanselman were dismissed in February 2009, approximately two months before the de novo hearing in the district court. At the hearing, the dismissals were admitted into evidence and considered by the district court in making its final decision regarding termination of Hanselman's parental rights. There was, therefore, no basis for Hanselman to request a section 161.2011(a) continuance and the district court could not have abused its discretion in denying such a request.

### Factual Sufficiency of the Evidence to Support Grounds for Termination

A court may order involuntary termination only if the court finds that: (1) a parent committed a predicate act or omission harmful to the child, and (2) termination is in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001. The court must ensure that these findings are supported by clear and convincing evidence—a standard of proof specifically intended, in view of the constitutional interests at stake, to reduce the risk of erroneous terminations. *Id.*; *see Santosky v. Kramer*, 455 U.S. 745, 765-65 (1982); *In re G.M.*, 596 S.W.2d 836, 847 (Tex. 1990). This Court, too, must apply a heightened standard of appellate review to complaints that the evidence is factually insufficient to support the findings necessary for termination. In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must inquire "whether the

7

evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

The jury found that the parent-child relationship between Hanselman and each of the four children should be terminated based on clear and convincing evidence of at least one of two predicate grounds:  that Hanselman (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, or (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical and emotional well-being of the children.  *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E).  Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d at 362.  Because Hanselman does not challenge the best interest finding, we must uphold the finding of termination if there is factually sufficient evidence to support either of the two predicate grounds alleged.  *See Hann v. Texas Dep't of Protective and Regulatory Servs.*, 969 S.W.2d 77, 81 (Tex. App.—El Paso 1998, pet. denied).

We first consider whether the evidence was sufficient to establish by clear and convincing evidence that Hanselman knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical and emotional well-being.  *See* Tex. Fam. Code Ann. § 161.001(1)(D).  Subsection 161.001(1)(D) requires proof of endangerment, which means exposing a child to loss or injury, or jeopardizing a child's emotional or physical health. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).  Subsection D focuses on

8

dangerous conditions or surroundings that endanger the physical or emotional well-being of the child. *In re* A.S., 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). While subsection D concerns the child's living environment, rather than the parent's conduct, parental conduct is relevant to the child's environment. *Id.* While the parent need not have certain knowledge that an actual injury is occurring, the parent must at least be aware of the potential for danger to the child in such an environment and must have disregarded that risk. *In re C.L.C.*, 119 S.W.3d 382, 392 (Tex. App.—Tyler 2003, no pet.). Domestic violence, lack of self control, and a propensity for violence may be considered as evidence of endangerment. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In the Interest of R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. ref'd). A child may be endangered by a home environment in which he is continually exposed to unsanitary living conditions. *See, e.g.*, *Phillips v. Texas Dep't of Protective and Regulatory Servs.*, 25 S.W.3d 348, 354-55 (Tex. App.—Austin 2000, no pet.).

At trial, the jury heard extensive testimony from Hanselman that his relationship with Prillerman, the children's mother, was unstable and often violent. He testified that Prillerman had physically assaulted him on more than one occasion and that assault charges had been filed against her. In early 2007, Prillerman slapped Hanselman, waved a knife at him and stabbed it through a window. Thereafter, Prillerman became increasingly verbally abusive. In February 2008, Prillerman broke two of their mobile home's exterior windows, broke down interior doors, and attacked Hanselman while all four children were inside the home. Hanselman called 911 and told the responding officers that Prillerman had a psychotic break and he believed she might have attacked

9

him with a knife. He and Prillerman reconciled two weeks later. Hanselman testified that even though he had been told that domestic violence has serious emotional consequences for children who witness it, he continued to allow Prillerman to live with him and the children. Hansleman also testified that he believed Prillerman used drugs when the children were in her care and that her drug use adversely affected the children. He also agreed that his and Prillerman's drug use endangered the children's emotional needs "a little bit."

Hanselman also testified regarding the unstable living conditions the children experienced. Since the birth of S.M.H. in November 2002, the family had lived in seven different places, including with various of Hanselman's and Prillerman's family members. The children had been removed from Hanselman and Prillerman's care by the Department three different times since March 2006. In February 2008, the family moved into a mobile home that had no heat. From March to June 2008, Hanselman and the children lived in several different motels until he bought another mobile home. S.M.H. missed many days of school and was eventually dropped from her pre-kindergarten class.

A Child Protective Services investigator testified regarding the unsanitary living conditions at one of the family's residences. When she arrived at the home, she detected a bad smell and observed food that appeared to have been sitting out for one or two days. She also saw roaches on the counter. S.M.H. had climbed on the counter looking for food. She observed feces on the floor of one of the bedrooms along with wet toilet paper and dirty diapers. The refrigerator was broken and contained spoiled milk. There was no air conditioning or heat. The furnace had been removed leaving an exhaust pipe exposed. In the living room she found a pipe cleaner she believed had been used to clean a marihuana pipe. The children were unwashed and wearing dirty clothes,

were sick, and had lice. The investigator testified that during her investigation she learned that Hanselman was living in the house with Prillerman and the children. In her opinion, both Hanselman and Prillerman were directly responsible for the condition of the house. Other witnesses testified regarding the children's living conditions including an officer who responded to Hanselman's 911 call. The officer stated that he saw marihuana stems and seeds in an ashtray in the house as well as a knife lying on a table. Hanselman himself acknowledged that the children would turn over the trash can and scatter trash and diapers that would not be discovered for several days. Hanselman also testified that he had found needles in the house, which he attributed to the previous owner's intravenous drug use.

Hanselman testified regarding his drug use and its effects on the children. He admitted to having had a problem with cocaine, which he first started using when he was thirteen years old. He used cocaine once a week in 2005, and later started smoking crack cocaine with Prillerman. Hanselman testified that he used cocaine when he was living with his children and Prillerman, that his crack cocaine use increased to three times a week, and became "really" bad in June 2008. In September 2008 Hanselman was ingesting from four to ten rocks of crack cocaine a day. Over the years, Hanselman participated in at least two drug rehabilitation programs, but each time either never ceased using drugs or resumed his drug use shortly after completing the program. Hanselman testified that his drug use caused him to be absent from the home and irritable with the children when he was home. He stated that he made S.M.H. responsible for many parenting chores, including changing her siblings' diapers before she was six years old. He agreed that he chose drugs over the children and that it was a "bad thing" for them that he was absent from the home because of his drug use.

11

There was also testimony that the drug use, unsanitary living conditions, domestic violence and instability were ongoing despite the Department's numerous efforts to intervene and provide Hanselman and Prillerman with assistance. An officer with the Hays County Sheriff's Department testified about the conditions he observed at another of Hanselman's residences when conducting a welfare check initiated by a neighbor. When he arrived at the house he detected a bad odor coming from inside. The house was filthy and in disarray and the floor was rotted in spots. The sink in the bathroom was clogged and filled with dirty brown water and there was a pair of blue children's shorts with feces on them by the bathtub. The officer also found a lighter, a double-edged knife, and what he believed to be drug paraphernalia in various places in the house.

We agree that the Department proved by clear and convincing evidence that Hanselman knowingly placed or knowingly allowed his children to remain in conditions or surroundings that endangered their physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(D). Because ample evidence supports the jury's finding that Hanselman endangered the physical and emotional well-being of his children by continuing to expose them to unsanitary and unsafe living conditions, as well as to repeated and escalating family violence and drug use, we need not consider Hanselman's issue attacking the jury's finding under subsection E. We overrule Hanselman's second issue.

### *Guardian Ad Litem*

We construe Hanselman's third issue as a complaint that the trial court erred by allowing the guardian ad litem to testify about her recommendations relating to the children's best interest. Hanselman asserts that the guardian ad litem failed to fulfill her statutory duties because

12

she did not ask the children whether they desired to maintain a relationship with their father. Hanselman contends that he was irreparably harmed by the guardian ad litem's failure to ascertain and testify that the older children "had the desire to maintain a relationship with their father and possibly to remain with him" because such testimony "may have caused jurors to rethink their verdict."

A guardian ad litem appointed for a child is not a party to the suit but may conduct an investigation to the extent she considers necessary to determine the best interests of the child. *See id.* § 107.002(a)(1) (West 2008). The guardian ad litem shall, among other things, "seek to elicit in a developmentally appropriate manner the child's expressed objectives; . . ." *Id.* § 107.002(b)(2). At the time of trial, the oldest of the children was six years old. The guardian ad litem testified that the children loved their father and had a bond with him. She testified that S.N.H. and T.A.H. were too young to express their desires, but that she believed they loved their father. The guardian ad litem sought to discover the children's desires and feelings about their father in a manner she deemed developmentally appropriate, which is all the statute requires. *See* Tex. Fam. Code Ann. § 171.002(b)(2). Furthermore, the guardian ad litem testified at the de novo hearing that she heard the two older children tell the associate judge that they wanted to live with their father. The referring court was made aware of the older children's desires before it adopted the jury's finding that termination was in the child's best interest, a finding Hanselman does not challenge on appeal. On this record, we cannot conclude that the guardian ad litem failed to fulfill her statutory duties. The trial court did not err by permitting the guardian ad litem to testify regarding her opinion of whether

13

termination of the parent-child relationship was in each child's best interest.[5]  We overrule

Hanselman's third issue.

## CONCLUSION

Having overruled Hanselman's three appellate issues, we affirm the district court's

order of termination.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   December 9, 2010

---

[5]  We also note that one court of appeals has concluded that if a guardian ad litem does fail to follow the statutory requirements, such failure goes to the weight, rather than the admissibility, of testimony regarding the guardian ad litem's recommendations relating to the best interests of the child. *See In the Interest of J.H.M.*, No. 07-07-00109-CV, 2009 Tex. App. LEXIS 9886, at *40 (Tex. App.—Amarillo Dec. 29, 2009, no pet.) (mem. op.) ("In our reading of the statute, we do not find that the guardian ad litem will not be allowed to testify if they do not follow all of the requirements as set out in the statute. [W]e find that this would go more to the weight of the evidence and not its admissibility.").